UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THOMAS O'KEEFE, KENNETH (BRET) CUNNINGHAM, JOSEPH LEWIS, BRIAN JUDGE, BYOUNGHOON (PAUL) AHN, DIONE HEUSEL, BETSY RIGGS, CHRIS MILLER, and THOMAS (BRADLEY) WEST | * * * * * * * | |
| *Plaintiffs,* | * * * | CIVIL ACTION NO. 2:24-cv-2094 SECTION: |
| VERSUS | * * | MAGISTRATE JUDGE: |
| SMOOTHIE KING FRANCHISES, INC. and SK USA INC. | * * * | **JURY TRIAL DEMANDED** |
| *Defendants.* | * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
\* \*

---

## COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES

---

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs, Thomas O'Keefe, Kenneth (Bret) Cunningham, Joseph Lewis, Brian Judge, Byounghoon (Paul) Ahn, Dione Heusel, Mary (Betsy) Riggs, Chris Miller, and Thomas (Bradley) West, and hereby file this Complaint for Declaratory Judgment and Damages against Defendants, Smoothie King USA, Inc. and Smoothie King Franchises, Inc., and in support thereof aver as follows:

### PARTIES

1.

(A)    Plaintiff Thomas O'Keefe is a natural person of full age and majority

domiciled and residing in Louisiana. O'Keefe was the President and Chief Operating Officer of Smoothie King Franchises, Inc. from January 2013 until April 2017.

(B)    Plaintiff Kenneth (Bret) Cunningham is a natural person of full age and majority domiciled and residing in Louisiana. Cunninham was the Vice President, Design & Construction of Smoothie King Franchises, Inc. from 2008 until January 2017.

(C)    Plaintiff Joseph Lewis is a natural person of full age and majority domiciled and residing in Louisiana. Lewis was the Vice President and General Counsel of Smoothie King Franchises, Inc. from January 2013 until April 2018.

(D)    Plaintiff Brian Judge is a natural person of full age and majority domiciled and residing in New York. Judge was the Chief Financial Officer of Smoothie King Franchises, Inc. from November 2015 until May 2019.

(E)    Plaintiff Byounghoon (Paul) Ahn is a natural person of full age and majority domiciled and residing in South Korea. Ahn was the Vice President, Finance of Smoothie King Franchises, Inc. from May 2014 until 2018.

(F)    Plaintiff Dione Heusel is a natural person of full age and majority domiciled and residing in Alabama. Heusel was the Vice President, Human Resources of Smoothie King Franchises, Inc. from March 2013 to April 2015.

(G)    Plaintiff Mary (Betsy) Riggs is a natural person of full age and majority domiciled and residing in Alabama. Riggs was the Vice President, Business Integration and Technology of Smoothie King Franchises, Inc. from March 2016 until May 2018.

(H)    Plaintiff Chris Miller is a natural person of full age and majority domiciled and residing in Colorado. Miller was Vice President, Marketing of Smoothie King Franchises, Inc. from October 2015 until 2017.

(I)     Plaintiff Thomas (Bradley) West is a natural person of full age and majority domiciled and residing in Louisiana. West was Vice President, Operations of Smoothie King Franchises, Inc. from September 2014 until September 2017.

(J)     O'Keefe, Cunningham, Lewis, Judge, Ahn, Heusel, Riggs, Miller, and West are jointly referred to as "Plaintiffs."

2.

(A)     Defendant Smoothie King Franchises, Inc. ("SKF") is a Texas corporation with its principal place of business in Dallas, Texas. SKF was initially a Louisiana corporation, but re-domesticated as a Texas corporation in 2018. SKF's principal business establishment in Louisiana is 222 Clearview Parkway, Suite G, Metairie, LA 70001.

(B)     Defendant SK USA Inc. ("SK-USA," and together with SKF, "Smoothie King Defendants") is a Delaware corporation with its principal place of business in Dallas, Texas. SK-USA's principal business establishment in Louisiana is 222 Clearview Parkway, Suite G, Metairie, LA 70001.

## JURISDICTION, AND VENUE

3.

The amount in controversy exceeds $75,000.

4.

Thus, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) based on diversity of citizenship between the parties.

5.

This Court has jurisdiction over the Defendants because they have sufficient minimum contracts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

6.

Venue is proper in this Court because Defendants conducted business in this District, employed the Plaintiffs in the District, and caused damages to the Plaintiffs who reside in this District.

## FACTUAL ALLEGATIONS

7.

Defendant SKF is a private, non-public company that operates under the service mark "Smoothie King." SKF offers franchises that sell a variety of premium, handcrafted smoothies and smoothie bowls made with select real fruit and organic vegetables, and nutritional supplements blended fresh using proprietary recipes. The Smoothie King concept and primary product originated in 1973, in Metairie, Louisiana. SKF has been offering franchises since May 1988.

8.

SK-USA is a private, non-public company and the parent corporation of SKF.

9.

Plaintiffs are all former executives and employees of SKF.

10.

As part of their employment with SKF, all Plaintiffs were granted stock options in SKF and/or SK-USA that are exercisable in the event SKF engages in an initial public

offering ("IPO") and/or SK-USA engages in an initial public offering or a private, change-in-control transaction. All Plaintiffs were granted Options in SKF pursuant to their respective Employment Agreements and/or granted options in SK-USA in connection with SK-USA's 2016 Stock Option Compensation Plan (the "2016 Plan").

11.

On or about April 27, 2016, SK-USA adopted the 2016 Plan, whereby SK-USA undertook "to provide for the award of incentive stock options, ("Incentive Stock Options") within the meaning of Section 422 of the U.S. Internal Revenue Code of 1986, as amended (the "Code") and nonqualified stock options (together, "Awards") to eligible employees[.]" The 2016 Plan allows for Awards in the form of options to purchase common stock ("SK-USA Options") comprised of "Incentive Stock Options, other tax-qualified stock options, or nonqualified stock options, or a combination of any of those."

12.

The 2016 Plan also sets forth terms for the effective date, exercise, and termination of the Awards: "No Awards may be granted under the Plan after the tenth anniversary of the Effective Date; however, Awards prior to such date will remain in effect until such Awards have been satisfied, expired or canceled under the terms of the Plan and any applicable Grant Instrument." The 2016 Plan further stated that "An Option shall be exercisable in whole or in such installments and at the times determined by the Board and ***as set forth in the Grant Instrument***. . . . Each Option shall expire not later than 10 years (or, in the case of an Incentive Stock Option granted to a Ten Percent Owner, not later than 5 years) from its date of grant." (Emphasis added).

13.

None of the Plaintiffs were Ten Percent Owners as defined in the 2016 Plan.

14.

At the time Plaintiffs were awarded SK-USA Options, Smoothie King Defendants provided Plaintiffs with documents titled "2016 Stock Option Compensation Plan Grant Instrument for Incentive Stock Options" (the "Grant Instruments"). All Plaintiffs were based in Louisiana at the time they executed their respective Grant Instruments. Pursuant to their terms, the Grant Instruments "shall be governed by and construed in accordance with the laws of the State of Delaware, except as superseded by applicable Federal law."

15.

All Plaintiffs' Grant Instruments stated that the SK-USA Options expired 10 years from the grant date, with no indication of a shorter period nor any deadline related to Plaintiffs' separation from employment. The Grant Instruments further provide that Plaintiffs "***will*** be able to exercise [their] Options upon vesting." The Grant Instruments provide additional terms and conditions associated with Plaintiffs' "***right to exercise*** [their] Option[s.]"

16.

At or around the same time Plaintiffs were provided with Grant Instruments, Smoothie King Defendants also provided Plaintiffs with a document titled "Information About Your Stock Option Grant" (the "FAQs") to address questions regarding Plaintiffs' awards. The FAQs provided that "[u]nless your Grant Instrument provides otherwise, the expiration date of your option is the tenth anniversary of the grant date."

17.

The FAQs further stated that "in order to preserve the favorable tax treatment of an incentive stock option, you must exercise any vested portion of it within three months of your termination date. Otherwise, you may still exercise the vested portion of the incentive stock option up to the expiration date as provided in the Grant Instrument, but it will be treated as a nonqualified stock option for federal tax purposes."

18.

All Plaintiffs ceased their employments with SKF more than 3 months prior to the filing of this Complaint. Upon information and belief, at the time their employments ceased, each Plaintiff's SK-USA Options had either fully or partially vested, such that each Plaintiff who had been offered SK-USA Options had some number of vested SK-USA Options.

19.

At no time were Plaintiffs told that their SK-USA Options would expire if not exercised within 3 months of their separation of employment from SKF nor did the Grant Instrument or 2016 Plan state as much.

20.

As an example, when Plaintiff Bret Cunningham resigned his employment with SKF in January 2017, Smoothie King Defendants offered to pay Cunningham approximately four thousand dollars in exchange for releasing his interest in his SK-USA Options. Cunningham declined the offer, expressing his intent to hold onto his SK-USA Options as an investment for the future. At that time, Cunningham also made reference to a spreadsheet provided by Smoothie King Defendants with estimated values of the SK-

USA Options, as he believed they were worth more than Smoothie King Defendants were offering at the time, and would be worth considerably more in the future. At no point did any employee, agent, or representative of Smoothie King Defendants inform Cunningham that he only had 3 months to exercise his SK-USA Options before they would be terminated.

21.

As a further example, Plaintiff Thomas O'Keefe was granted 130 SK-USA Options pursuant to the 2016 Plan on or about May 10, 2016. All of those SK-USA Options vested by February 13, 2017. On or about March 16, 2017, O'Keefe resigned his employment with SKF.

22.

On or about August 28, 2023, O'Keefe received a letter from Smoothie King regarding a data breach. In response to receipt of the letter, on August 28, 2023, O'Keefe sent a text message to Wan Kim, Chief Executive Officer of SKF and SK-USA, explaining that he expected the letter to be notification of an IPO or other triggering event that would allow him to exercise his options. In response, Kim stated that "Regarding the IPO, your options terminated so not sure why you expect us to provide you notice." This was the first time SK-USA or SKF ever communicated to any Plaintiff that their SK-USA Options had been terminated. O'Keefe promptly responded that he disagreed and requested that someone from Smoothie King Defendants' legal department contact him.

23.

On October 12, 2023, Smoothie King Defendants' Chief Legal Officer ("CLO") and Corporate Secretary delivered a letter to O'Keefe communicating the following:

As described below, the ISOs granted to you under the ISO Grant have expired and are no longer available to exercise.

The ISO Grant consisted of 130 ISOs, granted subject to the terms of the Plan. Section 5.3 of the Plan requires ISOs to be "subject to all applicable terms, conditions, restrictions and limitations established by the Board, and [to] comply with Section 422 of the [Internal Revenue] Code." Section 422 of the Internal Revenue Code (the "Code") provides that, for an ISO to qualify for favorable tax treatment, it must be exercised within three months following termination of employment. In addition, Section 1 of the Plan grants the Board the discretionary authority to interpret the Plan, and Section 5.4 of the Plan permits the Board to establish any other terms, conditions, restrictions, and limitations with respect to options issued under the Plan.

The ISOs granted to you were intended to comply with Code Section 422, such that favorable tax treatment would be afforded to you upon exercise. Because you did not exercise the ISOs by July 28, 2017, three months following your separation of employment with Smoothie King Franchises, Inc., the ISOs failed to comply with all provisions of Code section 422. Accordingly, the Board has determined the ISOs granted to you under ISO Grant have expired as of July 28, 2017 and are no longer exercisable.

24.

On or about October 19, 2023, O'Keefe was for the first time provided with a copy of the 2016 Plan by attorneys for Smoothie King Defendants. After an opportunity to review the 2016 Plan, O'Keefe, an attorney, was unable to identify any terms that indicated his SK-USA Options terminated any sooner than 10 years from the grant date, as provided in his Grant Instrument. Upon inquiry, Smoothie King Defendants' CLO informed O'Keefe that:

Section 5.3 of the Plan states that the ISO's granted must comply with Section 422 of the Internal Revenue Code. Section 422 of the Code states that ISO's must be exercised within 3 months of the employee's separation date. Absent their exercise, and pursuant to the Code, the Board deemed the options expired.

25.

Upon further inquiry, an outside attorney for SK-USA informed O'Keefe that:

Regarding the 2016 Options Grant, those options were awarded as Incentive Stock Options. Section 422(a)(2) of the Internal Revenue Code (the "Code") requires that, following a termination of employment. Incentive Stock Options must be exercised within three months following termination is due to disability (Code sec. 422(c)(6)) to receive the favorable tax treatment afforded Incentive Stock Options under section 421(a) of the Code. In establishing the [2016] plan, the Board intended that all option awards were to be in the form of Incentive Stock Options only. The Plan has been administered such that, when any option ceases to satisfy the requirements of Code Section 422, the option is deemed forfeited/cancelled. Thus, those Incentive Stock Options awarded to you under the 2016 stock option plan were cancelled when they were not exercised within three months following your termination of employment and thereby ceased to qualify under Code section 422.

26.

Based upon information and belief, these statements from Smoothie King Defendants' in-house and external counsel were post hoc rationalizations for terminating Plaintiffs' SK-USA Options; are inconsistent with the plain language of the 2016 Plan, the FAQs, and the Grant Instruments; were not articulated prior to 90 days after each Plaintiffs' employment ceased (the time Plaintiffs' SK-USA Options were purportedly terminated); were never communicated to Plaintiffs prior to Plaintiffs' SK-USA Options being purportedly cancelled; and are not proper legal interpretations of the 2016 Plan, the Grant Instruments, or the Internal Revenue Code.

27.

O'Keefe was also granted options to purchase up to two hundred and fifty (250) shares of common stock in SKF pursuant to his January 2, 2013, Employment Agreement (Stock Options in SKF are referred to as "SKF Options"). When O'Keefe inquired about his SKF Options, he was informed that:

With respect to your Employment Agreement, the options to which section 5(c) refers were never awarded to you. A Stock Option plan was adopted in 2013, but all awards under that plan were cancelled when the 2016 Stock Option Compensation Plan was adopted. Further, even if the options had

been properly awarded, they would have been forfeited or cancelled upon your termination. When you voluntarily resigned from employment with Smoothie King Franchises, Inc. on April 28, 2017, you were only entitled to those compensation and benefits required by law -- your base salary through your date of separation, COBRA continuation coverage rights, and any other rights afforded to other terminated employees under company benefit programs, as described in section 7(b) of the Employment Agreement. Therefore, any options, had they been awarded, would have been cancelled upon your resignation. Accordingly, you have no outstanding stock options.

28.

At this point, having been told by Smoothie King Defendants' counsel that all of his options had been terminated, forfeited, or cancelled, O'Keefe sought legal representation.

29.

O'Keefe subsequently notified other Plaintiffs that their SK-USA and/or SKF Options may have been deemed expired and terminated, or otherwise never awarded and/or cancelled, by Smoothie King Defendants. Up to that point, all Plaintiffs had believed their SK-USA Options remained exercisable until 10 years from their respective grant dates, pursuant to the Grant Instruments, and that all SKF Options remained existing and exercisable pursuant to the terms of the Employment Agreements.

30.

All Plaintiffs with SK-USA Options were issued Grant Instruments less than 10 years ago. Presently, based on representations from Smoothie King Defendants and their attorneys, all Plaintiffs maintain the understanding and belief that Smoothie King has deemed their SK-USA Options expired and/or terminated. Further, any Plaintiffs who were granted SKF Options believe those options have been deemed forfeited and/or cancelled.

## COUNT I – DECLARATORY JUDGMENT
### (All Defendants)

31.

Plaintiffs incorporate by reference all previous allegations in the preceding paragraphs as if fully set forth herein.

32.

As a result of the matters described herein, there exists between Plaintiffs and Defendants a genuine and actual controversy concerning their respective rights and obligations regarding the grant of SK-USA Options under the terms of Plaintiffs' Grant Instruments. Specifically, Plaintiffs maintain that their SK-USA Options remain exercisable until 10 years from the grant date, which would be at least May 2026, and Smoothie King Defendants contend that Plaintiffs' SK-USA Options expired when they were not exercised within three (3) months after each Plaintiffs' separation date as a function of Section 422 of the Internal Revenue Code.

33.

The Terms and Conditions of the 2016 Plan dictate that SK-USA Options "***shall*** be exercisable . . . at the times set forth by the Board and ***as set forth in the Grant Instrument***. Each Option ***shall expire not later than 10 years*** (or, in the case of an Incentive Stock Option granted to a Ten Percent Owner, not later than 5 years) ***from is date of grant***." (Emphasis added). The 2016 Plan further provides only that "Incentive Stock Options shall . . . comply with Section 422 of the Code."

34.

Section 422 of the IRS Code defines an Incentive Stock Option as one that, *inter alia*, "by its terms is not exercisable after the expiration of 10 years from the date such

option is granted." 26 U.S.C. § 422(b)(3). Additionally, Section 422 of the Code provides

that the favorable tax treatment granted under

> Section 421(a) shall apply with respect to the transfer of a share of stock to
> an individual pursuant to his exercise of an incentive stock option if— . . .
> at all times during the period beginning on the date of the granting of the
> option and ending on the day 3 months before the date of such exercise,
> such individual was an employee . . . .

26 U.S.C. § 422(a)(2); *see also First Marblehead Corp. v. House*, 401 F. Supp. 2d 152,

156 (D. Mass. 2005), *vacated in part on other grounds*, 473 F.3d 1 (1st Cir. 2006) ("The

time requirement contained in § 422(a) is not a limit on the exercisability of an ISO but a

limit on the availability of the special tax treatment in § 421(a).") (applying Delaware law).

35.

Accordingly, the Grant Instruments state that the Plaintiffs' SK-USA Options are

exercisable for up to 10 years after the grant date. Both the 2016 Plan and Section 422

contemplate Incentive Stock Options that are exercisable for up to ten (10) years from the

grant date. The 3-month time period provided in Section 422(a) is only applicable to the

extent it controls the favorable tax treatment pursuant to Section 421(a). No other terms of

the 2016 Plan or Grant Instruments indicate that Plaintiffs' SK-USA Options terminate 3

months after separation of employment if not exercised. At no time was it communicated

to any Plaintiff that Plaintiffs' SK-USA Options would terminate 3 months after separation

of employment if not exercised. Indeed, the FAQs provided by Smoothie King Defendants

expressly state that Plaintiffs' SK-USA Options remain exercisable following the 3 month

deadline, and in such case will be treated as a nonqualified stock option for federal tax

purposes.

36.

A declaration by this court finding that (A) Section 422 does not require that Plaintiffs' had to exercise their SK-USA Options awarded pursuant to the 2016 Plan and Grant Instruments within 3 months of their respective separation dates from SKF or else their SK-USA Options would terminate; and (B) Plaintiffs' SK-USA Options awarded under the 2016 Plan and Grant Instruments have not terminated and remain exercisable pursuant to the terms of the 2016 Plan and Grant Instruments until 10 years from the grant date, is necessary to resolve the controversy between the parties.

## COUNT II – BAD FAITH BREACH OF CONTRACT
### (All Defendants)

37.

Plaintiffs incorporate by reference all previous allegations in the preceding paragraphs as if fully set forth herein.

38.

In the alternative, if Smoothie King Defendants in fact terminated Plaintiffs' SK-USA Options, Smoothie King Defendants materially breached their obligations to Plaintiffs under the Grant Instruments by declaring the SK-USA Options expired and/or terminated in contradiction to the terms of the Grant Instruments.

39.

Smoothie King Defendants contracted with Plaintiffs to provide them with SK-USA Options that were exercisable up to a point of 10 years from the grant date, pursuant to the terms of the Grant Instruments.

40.

At all times relevant hereto, Plaintiffs performed all of their obligations under the terms of their respective Employment Agreements and Grant Instruments.

41.

Statements from Smoothie King Defendants' in-house and external counsel constitute an anticipatory breach of Smoothie King Defendants' obligations under the Grant Instruments that ensure Plaintiffs the right to exercise their SK-USA Options until the expiration dates provided by those Grant Instruments.

42.

By wrongfully terminating Plaintiffs' Options, Smoothie King Defendants in effect converted tens of millions of dollars worth of options, and unjustly enriched itself to the detriment of Plaintiffs. This was an intentional and malicious breach of contract by Smoothie King Defendants.

43.

As a direct, proximate, and legal result of the aforementioned breaches of the express terms of the Grant Instruments, Plaintiffs have been damaged and are entitled to relief sought herein for such bad faith breaches of contract.

**COUNT III – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(All Defendants)**

44.

Plaintiffs incorporate by reference all previous allegations in the preceding paragraphs as if fully set forth herein.

45.

Under Delaware law, the implied covenant of good faith and fair dealing attaches to every contract. *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005). Accordingly, Smoothie King Defendants were bound to interpret the terms of the 2016 Plan in good faith and to deal fairly with Plaintiffs. Smoothie King Defendants may not evade the spirit of the Grant Instruments and deny Plaintiffs' vested rights through bad faith interpretation and application of the 2016 Plan.

46.

Based upon information and belief, Smoothie King Defendants breached their duties of good faith and fair dealing by terminating and/or reissuing Plaintiffs' SK-USA Options in bad faith and in contravention of the Plaintiffs' reasonable expectations and the spirit of the 2016 Plan and Grant Instruments.

47.

As a direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing attached to Smoothie King Defendants' duties under the Grant Instruments, Plaintiffs have been damaged and are entitled to relief sought herein for such breaches of contract.

## COUNT IV – NEGLIGENT MISREPRESENTATION
### (All Defendants)

48.

Plaintiffs incorporate by reference all previous allegations in the preceding paragraphs as if fully set forth herein.

16

49.

Each Plaintiff was provided a Grant Instrument that expressly stated that all SK-USA Options granted thereunder would expire 10 years from the grant date. Plaintiffs were further provided with the FAQs that expressly stated that their Incentive Stock Options **would not expire** if they were not exercised within 3 months of the employee's separation date, and would instead be treated as a nonqualified stock option.

50.

Assuming Smoothie King Defendants in fact terminated Plaintiffs' SK-USA Options, Smoothie King Defendants materially breached their promises to Plaintiffs under the Grant Instruments.

51.

Furthermore, according to Smoothie King Defendants' attorneys, the 2016 Plan was created with the intention of terminating all SK-USA Options that were not exercised within 3 months of an employee's separation. Thus, Smoothie King Defendants knew or should have known that its representations that Plaintiffs had 10 years to execute their options, even after termination, were false at the time they were made.

52.

Further, at the time that Plaintiffs separated from their employment with SKF, SKF and/or SK-USA had a duty to give Plaintiffs materially accurate information about their stock options, which had been granted as a benefit of their employment. SKF and/or SK-USA never informed the Plaintiffs that they had only 90 days from cessation of their employment to exercise their SK-USA Options or those options would be terminated.

53.

SK-USA and SKF each had a duty to provide accurate information regarding the terms and conditions of the Grant Instruments. Smoothie King Defendants breached this duty because they did not exercise reasonable care or competence in communicating the information the Plaintiffs needed to know. Plaintiffs detrimentally relied on Smoothie King Defendants' representations and omissions by not exercising their options within 3 months of the separation of their employment and believing until less than a year prior to filing this Complaint that all of their vested options remained exercisable. Plaintiffs suffered and will suffer substantial monetary damages by relying on Smoothie King Defendants' false representations and omissions.

54.

Plaintiffs seek recovery of the actual damages they suffered as a result of such negligence.

## COUNT VI – LOUISIANA CIVIL CODE ARTICLE 1953
### (All Defendants)

55.

Plaintiffs incorporate by reference all previous allegations in the preceding paragraphs as if fully set forth herein.

56.

Plaintiffs assert that Smoothie King Defendants had no intent to perform their obligations under the express terms of the Grant Instruments, and intentionally misled Plaintiffs with the expectation that Plaintiffs would rely on Smoothie King Defendants' representations and not exercise their SK-USA Options within 3 months of their separation of employment such that Smoothie King Defendants could reissue those options to the

unjust enrichment of Smoothie King Defendants and the detriment of option holders, including Plaintiffs.

57.

Under the facts and circumstances of this case, Smoothie King Defendants intentionally misrepresented and failed to disclose material terms and conditions of the 2016 Plan and Grant Instruments, causing actual or potential loss or damage to Plaintiffs. La. C.C. art. 1953.

58.

Plaintiffs seek recovery for all damages sustained as a result of Smoothie King Defendants' intentional misrepresentation and suppression of the truth, as well as attorney's fees and costs. La. C.C. art. 1958; *Stutts v. Melton*, 2013-0557 (La. 10/15/13), 130 So. 3d 808, 814-15 (holding that Civil Code Article 1958 does not limit recovery of damages and attorneys' fees to only cases where the victim seeks recission).

## COUNT VII – LOUISIANA UNFAIR TRADE PRACTICES ACT
### (All Defendants)

59.

Plaintiffs incorporate by reference all previous allegations in the preceding paragraphs as if fully set forth herein.

60.

Taken together, Smoothie King Defendants' actions and omissions illustrate that it is the policy of Smoothie King Defendants to cancel stock options in SK-USA as early as possible, and generally earlier than any deadline the reasonable employee would be aware of, in order to reissue those options to the unjust enrichment of Smoothie King Defendants and the detriment of the option holders.

61.

This policy was not communicated to the employees for the express purposes of inducing the SK-USA Option holders not to timely exercise their SK-USA Options. In this way, Smoothie King Defendants were able to reissue those SK-USA Options to the unjust enrichment of Smoothie King Defendants and the detriment of SK-USA Option holders, including Plaintiffs.

62.

Smoothie King Defendants' acts and omissions, as described throughout this Complaint, constitute unfair or deceptive acts or practices in the conduct of trade or commerce.

63.

Accordingly, Smoothie King Defendants' misconduct violates the Louisiana Unfair Trade Practices Act, La. R.S. §§ 51:1401 *et seq.*, entitling Plaintiffs to their actual damages, as well as attorneys' fees and costs, pursuant to La. R.S. § 51:1409(A).

**COUNT VIII – DECLARATORY JUDGMENT AS TO SKF OPTIONS**
**(Defendant SKF)**

64.

Plaintiffs incorporate by reference all previous allegations in the preceding paragraphs as if fully set forth herein.

65.

As a result of the matters described herein, there exists between Plaintiffs and Defendants a genuine and actual controversy concerning their respective rights and obligations regarding the grant of SKF Options to certain Plaintiffs in their Employment Agreements.

66.

Plaintiffs maintain that their SKF Options remain existing and exercisable, and Defendants maintain that those SKF Options have been forfeited or cancelled.

67.

All Employment Agreements granting SKF Options "shall be governed by and construed in accordance with the laws of the State of Louisiana, without regard to principles of conflict law."

68.

A declaration by this court finding that the SKF Options were not forfeited or cancelled upon a Plaintiff's termination is necessary to resolve a controversy between the Defendants and any Plaintiff who was granted SKF Options.

## COUNT IX – BAD FAITH BREACH OF CONTRACT
### (Defendant SKF)

69.

Plaintiffs incorporate by reference all previous allegations in the preceding paragraphs as if fully set forth herein.

70.

In the alternative, if SKF in fact did not award and/or cancelled Plaintiffs' SKF Options, SKF materially breached its obligations to Plaintiffs under their Employment Agreements.

71.

SKF contracted with certain Plaintiffs to provide them with SKF Options pursuant to the terms of their respective Employment Agreements.

72.

At all times relevant hereto, Plaintiffs performed all of their obligations under the terms of their respective Employment Agreements and Grant Instruments.

73.

Statements from Smoothie King Defendants' in-house and external counsel constitute an anticipatory breach of Smoothie King Defendants' obligations under certain Employment Agreements.

74.

SKF's breaches were in bad faith, and these breaches caused damage to the Plaintiffs in an amount to be proven at trial.

75.

As a result of SKF's bad faith breach of contract, SKF is liable to Plaintiffs not only for all damages that are foreseeable under Louisiana Civil Code article 1996, but also for all consequential damages under Louisiana Civil Code article 1997.

76.

Plaintiffs do not allege any claims or causes of action that arise under federal law.

**PRAYER FOR RELIEF AND JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

**WHEREFORE,** Plaintiff prays for relief and judgment, as follows:

(A)    Declaratory judgment that their SK-USA Options and SKF Options remain in effect and exercisable through the expiration date provided in the Grant Instruments;

(B)    In the alternative, Damages in an amount to be proved at trial;

(C)      Awarding Plaintiffs their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

(D)      Awarding such equitable/injunctive or other further relief as the Court may deem just and proper.

DATED: August 26, 2024.

Respectfully submitted,

*/s/ Jason W. Burge*
James R. Swanson (LA Bar No. 18455)
Jason W. Burge (LA Bar No 30420)
Isabel A. Englehart (LA Bar No. 40354)
**FISHMAN HAYGOOD, L.L.P.**
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170-4600
Telephone: (504) 586-5252
Facsimile: (504) 586-5250
jswanson@fishmanhaygood.com
jburge@fishmanhaygood.com
ienglehart@fishmanhaygood.com

*Attorneys for Plaintiff*