UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THOMAS O'KEEFE, ET AL., **Plaintiffs** | CIVIL ACTION |
| VERSUS | NO. 24-2094 |
| SMOOTHIE KING FRANCHISES, INC., ET AL., **Defendants** | SECTION: "E" (3) |

## ORDER AND REASONS

Before the Court is Defendants Smoothie King Franchises, Inc.'s ("Smoothie King") and SK USA Inc.'s ("SK USA") (collectively "Defendants") Motion for Leave to File Amended Answer and Counterclaims.[1] Plaintiffs Thomas O'Keefe, Kenneth Cunningham, Joseph Lewis, Brian Judge, Byounghoon Ahn, Dione Heusel, Betsy Riggs, and Thomas West (sometimes collectively referred to as "Plaintiffs") filed an opposition.[2] Defendants filed a reply.[3]

## FACTUAL BACKGROUND

Plaintiffs are former executives and employees of Defendant Smoothie King.[4] Plaintiffs allege that on various dates, as part of their employment with Defendants, Defendants granted them stock options exercisable in the event Defendants engage "in an initial public offering or a private, change-in-control transaction."[5]

Plaintiffs allege in their amended complaint that, at the time Defendants granted Plaintiffs their stock options, Defendants "provided Plaintiffs with documents titled '2016

---

[1] R. Doc. 86.
[2] R. Doc. 99.
[3] R. Doc. 101.
[4] R. Doc. 11 at ¶¶ 1, 9.
[5] *Id.* at ¶¶ 10-11.

1

Stock Option Compensation Plan Grant Instrument for Incentive Stock Options'" (the "Grant Instruments"), which supplied "terms for the effective date, exercise, and termination of the stock options."[6] Plaintiffs allege the Grant Instruments provided their stock options would expire 10 years from the date the stock options were granted "with no indication of a shorter period nor any deadline related to Plaintiffs' separation from employment."[7] Plaintiffs allege Defendants also provided Plaintiffs with a document entitled "Information About Your Stock Option Grant," (the "FAQ Document") which stated that "in order to preserve the favorable tax treatment" of a stock option, employees "must exercise any vested portion of it within three months of . . . termination . . . . Otherwise, [employees] may still exercise the vested portion of the incentive stock option up to the expiration date . . . , but it will be treated as a nonqualified stock option for federal tax purposes."[8]

Plaintiffs also allege that "at the time their employments ceased, each Plaintiff's SK-USA Options had either fully or partially vested, such that each Plaintiff who had been offered SK-USA Options had some number of vested SK-USA Options."[9] Plaintiffs allege they were not informed their stock options would expire if not exercised within three months of the termination of their employment with Smoothie King.[10] Plaintiffs allege they all ceased employment with Smoothie King more than three months before filing suit.[11]

Plaintiffs allege the first time any Plaintiff learned that Defendants considered the

---

[6] *Id.* at ¶¶ 12, 14.
[7] *Id.* at ¶ 15.
[8] *Id.* at ¶ 17.
[9] *Id.*
[10] *Id.* at ¶ 19.
[11] *Id.* at ¶ 18.

2

stock options terminated was during a text exchange on August 28, 2023 between Plaintiff Thomas O'Keefe ("O'Keefe") and Smoothie King's Chief Executive Officer ("CEO"), Wan Kim ("Kim").[12] Following this text exchange, Plaintiffs allege O'Keefe requested that an individual from Defendants' legal department contact O'Keefe regarding his stock options.[13] Plaintiffs allege Defendants' Chief Legal Officer and Corporate Secretary delivered a letter to O'Keefe on October 12, 2023.[14] Plaintiffs allege this letter confirmed Smoothie King's position that the stock options had expired.[15] Plaintiffs allege O'Keefe further communicated with Defendants and received an explanation as to why Smoothie King believed Plaintiffs' stock options had terminated.[16]

Plaintiffs allege Defendants' statements with respect to why Plaintiffs' stock options terminated were "post hoc rationalizations" that "are inconsistent with the plain language of the 2016 Plan, the FAQ [Document], and the Grant Instruments."[17] Based on Smoothie King's position that Plaintiffs' stock options were terminated, Plaintiffs filed their original complaint on August 26, 2024 bringing claims against all Defendants for declaratory judgment, bad faith breach of contract, breach of implied covenant of good faith and fair dealing, negligent misrepresentation, breach of the duties imposed by Louisiana Civil Code article 1953, and breach of the Louisiana Unfair Trade Practices Act.[18] Plaintiffs bring a bad faith breach of contract claim as to the Smoothie King stock options only against Smoothie King Franchises, Inc.[19] Plaintiffs filed an amended

---

[12] *Id.* at ¶ 22.
[13] *Id.*
[14] *Id.* at ¶ 23.
[15] *Id.*
[16] *Id.* at ¶¶ 24-25.
[17] *Id.* at ¶ 26.
[18] *Id.* at ¶¶ 31-60.
[19] R. Doc. 1 at ¶¶ 37-63.

3

complaint on October 28, 2024, bringing the same claims, with the exception of the count seeking a declaratory judgment which was deleted.[20]

## PROCEDURAL HISTORY

On November 12, 2024, approximately two months after the Plaintiffs' original complaint was filed,[21] Defendants adopted an "Action by Unanimous Written Consent of the Sole Director of SK USA" (the "Consent").[22] Defendants argue "the Consent explained that any options belonging to Plaintiffs remained outstanding, unaltered, and subject to the terms of the governing instruments."[23]

On February 25, 2025, Defendants filed their answer to the amended complaint.[24] On July 17, 2025, Defendants filed the instant Motion for Leave to File Amended Answer and Counterclaims.[25] Defendants argue they first learned that Plaintiffs "believe the options at issue no longer exist and cannot be exercised" in the June 17, 2025, deposition of O'Keefe.[26]

In Defendants memorandum in support of their proposed amended answer, they submit that they (1) make "minor changes such as clarifying language added to certain affirmative defenses,"[27] (2) add the affirmative defense that O'Keefe's claims are barred by the express terms of his Resignation Agreement with Smoothie King,[28] and (3) add counterclaims against Plaintiffs for declaratory judgment that the stock options remain intact and a claim for breach of contract and attorneys' fees specifically naming the

---

[20] R. Doc. 11. Plaintiffs brought claims for declaratory judgment in their original complaint, but dropped these claim in their amended complaint. R. Doc. 1 at ¶¶ 31-36, 64-68; R. Doc. 11.
[21] R. Doc. 1.
[22] R. Doc. 75-13.
[23] R. Doc. 95-4 at p. 4.
[24] R. Doc. 33.
[25] R. Doc. 95-4.
[26] *Id.* at pp. 3-4.
[27] *Id.* at p. 2 n.1.
[28] R. Doc. 95-6 at p. 20, ¶ 10.

4

Resignation Agreement as the basis therefor.[29] Defendants contend this counterclaim for declaratory judgment is not waived because they did not receive a copy of O'Keefe's Resignation Agreement from Plaintiffs until May 23, 2025.[30]

In opposition, Plaintiffs argue Defendants are barred from asserting these counterclaims because they are compulsory counterclaims that were available to Defendants when they filed their original answer and, as a result, were waived by Defendants' failure to plead them in their original answer.[31] Plaintiffs further point out that, even if Defendants were unaware of these affirmative defenses and counterclaims until O'Keefe's deposition on June 17, 2025, Defendants waited over two months after the deposition to file their motion for leave to amend their answer and this delay amounts to a waiver.[32] Finally, Plaintiffs argue that Defendants have failed to show good cause for their delay and there are substantial reasons to deny the motion.[33]

## LEGAL STANDARD

Federal Rule of Civil Procedure 13(a)(1) provides:

A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim:

(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and

(B) does not require adding another party over whom the court cannot acquire jurisdiction.[34]

Rule 13(a)(1) refers to "compulsory" counterclaims.[35] "A counterclaim which is

---

[29] *Id.* at pp. 25-27 ¶¶ 22-32.
[30] R. Doc. 95-4 at p. 5.
[31] R. Doc. 99 at pp. 6-12.
[32] *Id* at p. 10.
[33] *Id* at pp. 13-23.
[34] FED. R. CIV. P. 13(a)(1).
[35] *Id.* at (a).

5

compulsory but is not brought is thereafter barred."[36]

In this case, Defendants seek leave to amend their answer after the scheduling order's deadline for amended pleadings to add a counterclaim has passed.[37] Under Rule 13(e), "The court may permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading." "Whether leave to amend should be granted is entrusted to the sound discretion of the district court, and that court's ruling is reversible only for an abuse of discretion."[38] Federal Rule of Civil Procedure 16(b) allows scheduling orders to "be modified only for good cause and with the judge's consent."[39] "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'"[40] In determining good cause, district courts in the Fifth Circuit consider four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."[41] "Rule 16(b) governs [the] amendment of pleadings after a scheduling order deadline has expired."[42]

Federal Rule of Civil Procedure 15(a) allows a district court to grant leave to amend freely when justice so requires.[43] The United States Court of Appeals for the Fifth Circuit has described Rule 15(a)'s standard as "more liberal" and "more permissive" than Rule

---

[36] *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974) (citing *Mesker Bros. Iron Co. v. Donata Corp.*, 401 F.2d 275, 279 (4th Cir. 1968)).
[37] R. Doc. 86; R. Doc. 29 at p. 8.
[38] *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).
[39] FED. R. CIV. P. 16(b).
[40] *S&W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1522.1 (2d ed. 1990)).
[41] *Id.* at 536.
[42] *Id.*
[43] FED. R. CIV. P. 15(a).

16(b)'s "good cause" standard.[44] Rule 15(a) "evinces a bias in favor of granting leave to amend."[45] Nevertheless, "[w]hen a party seeks to amend after expiration of the deadline for amending pleadings set forth in the Scheduling Order, Rule 16(b) requires the party to establish 'good cause' before analyzing the request under Rule 15(a)(2)."[46]

## I. Defendants proposed amendments to its affirmative defenses and its proposed counterclaim seeking a declaratory judgment will not be allowed.

As to Defendants' proposed amendments to its affirmative defenses, the proposed amendments are repetitive and non-substantive.[47] As admitted by the Defendants, the first proposed amendments make only "minor changes such as clarifying language added to certain affirmative defenses," such as allegations regarding principal place of business and failure to satisfy conditions precedent.[48] The second proposed amendment is the addition, to the already existing affirmative defense, that "O'Keefe's claims are barred by the express terms of his Resignation Agreement and Release . . . , including the releases and provisions contained in Sections 5.0 and 6" (the "Release" defense).[49]

Defendants admit their proposed amendments to their affirmative defenses merely "clarify" their "release" affirmative defense "by expressly identifying the agreement in which O'Keefe released his claim."[50] These amendments are not needed and

---

[44] *S&W Enters.*, 315 F.3d at 536; *Butler v. Taser Int'l, Inc.*, 535 Fed. App'x 371, 372 (5th Cir. 2013) (per curiam) (citing *S&W Enters.*, 315 F.3d at 536).
[45] *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (citation omitted). Leave to amend is not "automatic." *Id.* The Court must possess a "substantial reason" to deny leave to amend. *Id.* "The five relevant considerations for . . . determining whether to grant leave to amend a complaint are: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment." *Williams v. Tregre*, No. 23-1095, 2025 WL 721304, at *1 (E.D. La. Mar. 6, 2025).
[46] *Williams*, 2025 WL 721304, at *1.
[47] R. Doc. 95-6 at pp. 18-21 ¶¶ 1-22; R. Doc. 33 at pp. 18-21.
[48] R. Doc. 95-4 at p. 2 n.1.
[49] R. Doc. 95-6 at p. 20 ¶ 10.
[50] R. Doc. 95-4 at pp. 5-6.

are not important to the determination of Defendants' affirmative defenses.[51]

Defendants seek leave to amend their answer to assert a counterclaim for declaratory judgment that

> a. Any options issued to Counterdefendants remain unaltered and subject to the same terms and conditions at the time of issuance;
>
> b. Counterdefendants are authorized to exercise their stock options pursuant to the same terms and conditions at the time of issuance; and
>
> c. As such, any causes of action arising from the alleged cancellation of the options are without merit.[52]

The issues raised by this proposed counterclaim already are squarely before the Court, or the jury at a trial on the merits. The issues raised by Defendants' proposed counterclaim for declaratory judgment are precisely the issues raised in Count I of Plaintiffs' first amended complaint.[53] For Plaintiffs' to obtain their requested relief, they must prove the stock options are no longer exercisable. Because "Defendant[s'] counterclaim for declaratory judgment merely restates Defendant[s'] defenses to Plaintiffs['] breach of contract claim," it is repetitive and, as a result, not important.[54]

Justice does not require that Defendants be allowed to make their proposed amendments to their affirmative defenses or to assert their proposed counterclaim for declaratory judgment because neither proposed amendment is needed. "Although the federal rules favor the liberal amendment of pleadings, justice does not demand that a

---

[51] Defendants also mention proposed minor amendments to the answer. R. Doc. 95-4 at p. 1 n.1. These amendments are not necessary or needed in any sense and, to the extent this relief is requested, it is denied.
[52] R. Doc. 95-6 at pp. 25-26 ¶ 26.
[53] R. Doc. 11 at ¶¶ 31-40.
[54] *Custopharm, Inc. v. Chemwerth, Inc.*, No. 15-841, 2018 WL 2418573, at *1 (W.D. Tex. Mar. 13, 2018) (dismissing the defendant's counterclaim for declaratory judgment because it restated the defendant's defenses to the plaintiff's breach of contract claim); *Panasonic Co.*, 1994 WL 495868, at *1 (first quoting *Coleman*, 933 F.2d at 473; then citing *Youmans*, 791 F.2d at 348).

8

court give leave to append repetitive allegations."[55] Defendants will not be granted leave to amend their affirmative defenses or to add a counterclaim for declaratory judgment.

## II. Defendants' counterclaims are compulsory counterclaim.

Before analyzing the merits of Defendants' motion to add counterclaims, the Court must determine whether Defendants' proposed counterclaims are compulsory or permissive. If the counterclaims are compulsory, the Court's denial of Defendants' motion will result in Defendants losing the right to bring their counterclaims in this action and any future actions.[56] In this case, there is a logical relationship between Plaintiffs' claims and Defendants' counterclaims, it is likely that substantially the same evidence will support or refute Plaintiffs' claims as well as Defendants' counterclaims, and Plaintiffs' claims as well as Defendants' proposed counterclaims raise the same issues of fact and law.[57] Plaintiffs' first amended complaint includes claims related to the termination of Plaintiffs' stock options.[58] Defendants, in their amended counterclaims, seek declaratory judgment that Plaintiffs' stock options "remain intact" and also assert a breach of contract claim against O'Keefe for his alleged breach of the Resignation Agreement by filing this lawsuit.[59] In Defendants' words, "both Defendants' proposed amendments to their affirmative defenses as well as their counterclaims concern the options at issue and the Plaintiffs' rights to pursue such claims."[60] Accordingly, the Court finds that Defendants' counterclaims are compulsory.[61]

---

[55] *High Tech Commc'ns, Inc. v. Panasonic Co.*, No. 94-1477, 1994 WL 495868, at *1 (E.D. La. Sept. 2, 1994) (first quoting *Coleman v. Ramada Hotel Operating Co.*, 933 F.2d 470, 473 (7th Cir. 1991); then citing *Youmans v. Simon*, 791 F.2d 341, 348 (5th Cir. 1986)).
[56] *Baker*, 417 U.S. at 469 n.1 (citing *Mesker Bros. Iron Co.*, 401 F.2d at 279).
[57] *Underwriters at Int. on Cover Note JHB92M10582079 v. Nautronix, Ltd.*, 79 F.3d 480, 483 n.2 (5th Cir. 1996).
[58] R. Doc. 11.
[59] R. Doc. 95-6 at pp. 24-26 ¶¶ 22-32.
[60] R. Doc. 95-4 at p. 7.
[61] *Nautronix, Ltd.*, 79 F.3d at 483 n.2.

9

### III. Defendants will be given leave to amend their answer to assert their proposed counterclaim for breach of contract.

Defendants did not include a claim for breach of the Resignation Agreement, or a claim for attorneys' fees resulting from the breach, in their original answer.[62] As Plaintiffs concede,[63] Defendants' proposed amendment to add a counterclaim for breach of the Resignation Agreement is compulsory and will be barred if not asserted in this suit.[64] The Resignation Agreement itself should already have been the subject of discovery. As a result, allowing Defendants to raise this counterclaim likely will not require additional discovery and will not prejudice Plaintiffs.[65] In the event Plaintiffs need additional discovery to respond to Defendants' counterclaim for breach of the Resignation Agreement, they may request time for additional discovery from the Court. This will cure any prejudice Plaintiffs may suffer from Defendants' amendment.[66] The Court will hold a status conference with the parties to discuss the current pretrial deadlines.

The Court lacks a substantial reason to deny Defendants leave to amend to assert

---

[62] R. Doc. 33.
[63] R. Doc. 99 at p. 16.
[64] *Baker*, 417 U.S. at 469 n.1 (citing *Mesker Bros. Iron Co.*, 401 F.2d at 279); *High Performance Props. No. 3, LLC v. Educ. Mgmt., Inc.*, No. 24-1821, 2025 WL 903134, at *4 (E.D. La. Mar. 25, 2025).
[65] *See Johnson v. Holliday,* No. 15-38, 2016 WL 11804593, at *4 (M.D. La. May 27, 2016) ("As to the third and fourth factors, no undue prejudice will fall on the defendants. Minimal additional discovery should be required regarding the additional defendants. To the extent additional discovery is required, the Court is inclined to grant a continuance of the current discovery deadlines to address any prejudice to the defendants."); *Antero Res. Corp. v. C & R Downhole Drilling, Inc.*, No. 16-668, 2019 WL 13193895, at *6 (N.D. Tex. Jan. 3, 2019) (citing *Compression Labs, Inc. v. Okla. State Univ. Educ. & Rsch. Found., Inc.*, No. 93-20622, 1995 WL 241438, at *3 (N.D. Cal. Apr. 19, 1995)) ("The possible prejudice to Defendants is also minimal and curable. Although Antero seeks to add multiple new causes of action, they are mere expansions of an already existing theory of liability—Antero's fraud claim. Such additions do not dramatically alter the focus of this case, which has included a fraud claim from its outset. Accordingly, any discovery that may be required to address these new allegations would be limited in scope and does not, contrary to Defendants' arguments, support a finding of substantial prejudice.").
[66] *Johnson,* 2016 WL 11804593, at *4; *see also Murray v. Neff Rental, Inc.*, No. 08-0471, 2009 WL 3109880, at *5 (W.D. La. Sept. 28, 2009) ("[T]his Court will attempt to cure any potential prejudice to the plaintiff by re-opening the discovery deadline for the limited purpose of permitting depositions on the issue of Neff's counterclaim in recoupment. Therefore, this factor, as cured, does not bar the requested amendment."); *Antero Res. Corp.*, 2019 WL 13193895, at *6 ("A continuance . . . would relieve any prejudice experienced by Defendants . . . .").

their counterclaim for breach of contract. As explained above, the amendment is not unduly prejudicial, and the breach of contract counterclaim, unlike some other proposed amendments, is important.[67]

## CONCLUSIONS

**IT IS ORDERED** that Defendants' Motion for Leave to File Amended Answer and Counterclaims is **GRANTED IN PART** and **DENIED IN PART**.[68] Defendants are given leave to amend their answer on or before **August 25, 2025** to add a counterclaim for breach of contract and for attorneys' fees based on the Resignation Agreement. The motion is denied in all other respects.

**IT IS FURTHER ORDERED** that the Court will schedule a status conference to discuss the remaining pretrial deadlines by separate order.[69]

**New Orleans, Louisiana, this 18th day of August, 2025.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[67] *See Williams*, 2025 WL 721304, at *1.
[68] R. Doc. 86.
[69] Defendants' proposed amended answer shall not be filed into the record. R. Doc. 95-6.