UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| THOMAS O'KEEFE, ET AL.,<br>      **Plaintiffs** | CIVIL ACTION |
| **VERSUS** | NO. 24-2094 |
| SMOOTHIE KING FRANCHISES,<br>INC., ET AL.,<br>      **Defendants** | SECTION: "E" (3) |

## ORDER AND REASONS

Before the Court is Defendants Smoothie King Franchises, Inc.'s ("Smoothie King") and SK USA Inc.'s ("SK USA") (collectively, "Defendants") Motion to Exclude the Testimony of Craig McCann.[1] Plaintiffs Thomas O'Keefe, Kenneth Cunningham, Joseph Lewis, Brian Judge, Byounghoon Ahn, Dione Heusel, Betsy Riggs, and Thomas West (sometimes collectively referred to as "Plaintiffs") filed an opposition.[2] Defendants filed a reply.[3]

## FACTUAL BACKGROUND

This action arises out of Defendants' allegedly wrongful decision to terminate Plaintiffs' stock options in SK USA, Inc.[4] Plaintiffs are former executives and employees of Defendant Smoothie King.[5] Plaintiffs allege that on various dates, as part of their employment with Defendants, Defendants granted them stock options exercisable in the event Defendants engage "in an initial public offering or a private, change-in-control

---

[1] R. Doc. 113.
[2] R. Doc. 139.
[3] R. Doc. 142.
[4] R. Doc. 11.
[5] R. Doc. 11 at ¶¶ 1, 9.

1

transaction."[6] Plaintiffs allege in their amended complaint that, "at the time their employments ceased, each Plaintiff's SK-USA Options had either fully or partially vested, such that each Plaintiff who had been offered SK-USA Options had some number of vested SK-USA Options."[7] Plaintiffs allege they all ceased employment with Smoothie King more than three months before filing suit.[8]

Plaintiffs allege the first time any Plaintiff learned that Defendants considered the stock options terminated was during a text exchange on August 28, 2023 between Plaintiff Thomas O'Keefe and Smoothie King's Chief Executive Officer, Wan Kim.[9] Plaintiffs allege Smoothie King's legal department later confirmed Smoothie King's position that the stock options had "expired and are no longer available to be exercised."[10] Based on Smoothie King's position that Plaintiffs' stock options were terminated, Plaintiffs filed their original complaint on August 26, 2024.[11] Plaintiffs filed an amended complaint on October 28, 2024.[12]

Relevant to the instant motion, Plaintiffs engaged expert Craig J. McCann, Ph.D. and CFA, ("Dr. McCann"), "to provide an analysis of the value of the Plaintiffs' options on stock of SK USA."[13] In the conclusion of his expert report, Dr. McCann distilled his findings down into two opinions:

> SK USA Holdings' recent sale of preferred stock establishes an estimate of $3,164 per option on Plaintiffs' options on SK USA Inc.'s common stock using the OPM *backsolve* method. This estimate substantially understates the value of Plaintiffs' options because the preferred stock offering was chosen by SK USA Holdings' controlling shareholder as a method for

---

[6] *Id.* at ¶¶ 10-11.
[7] *Id.* at ¶ 17.
[8] *Id.* at ¶ 18.
[9] *Id.* at ¶ 22.
[10] *Id.* at ¶ 23.
[11] R. Doc. 1.
[12] R. Doc. 11.
[13] R. Doc. 114-8 at p. 8.

extracting between $100 million and $130 million without selling stock. Based on SK USA Holdings' revealed preference to not sell stock in order to raise the funds its CEO wished to withdraw I conclude the Plaintiffs' options were worth $3,337 to $3,619 per contract.

Table 2 summarizes the value of Plaintiffs' options for various SK USA Holdings' equity values in the range I see supported by the facts in this case. The options are certainly worth more than the $3,164 implied by the OPM *backsolve* method. I believe, consistent with private equity bids and SK USA Holdings' executives' sworn testimony that SK USA Holdings equity value was between $700 million and $800 million and therefore the Plaintiffs' options were worth between $3,246 and $3,743 per contract.[14]

In the instant motion, Defendants request that the Court exclude Dr. McCann's testimony entirely.[15] Defendants do not contest Dr. McCann's qualifications as an expert.[16] Instead, Defendants move to exclude his testimony for three reasons: (1) Dr. McCann failed to adhere to the applicable professional standards in his field; (2) Dr. McCann's stock valuation opinions focus on irrelevant time frames; and (3) there is too great an analytical gap between the facts of this case and Dr. McCann's analysis.[17] Plaintiffs oppose the motion arguing Dr. McCann is qualified to offer his expert opinions and overall offers relevant and admissible opinions based on sufficient facts and data.[18]

## **LEGAL STANDARD**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the

---

[14] R. Doc. 114-8 at pp. 17-18.
[15] *Id.* at p. 23.
[16] R. Doc. 114-8; R. Doc. 144-4.
[17] R. Doc. 114-4 at pp. 10-23.
[18] R. Doc. 140-4.

product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.[19]

The threshold inquiry is whether the expert witness possesses the requisite qualifications to render an opinion on particular subject matter.[20] If the expert's qualifications are found to be sufficient, the court must then examine whether the expert's opinions are reliable and relevant.[21]

The United States Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[22] provides the analytical framework for determining whether expert testimony is admissible under Rule 702. "Under *Daubert*, Rule 702 charges trial courts to act as 'gate-keepers,' making a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid,'"[23] and of whether that reasoning or methodology "can be reliably applied to the facts of the case."[24] The party offering the expert opinion must show by a preponderance of the evidence that the expert's testimony is reliable and relevant.[25]

"[E]xpert testimony proffered" must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."[26] This is essentially a relevance requirement.[27] With respect to the proper scope of expert testimony, Rule 704 provides

---

[19] FED. R. EVID. 702.
[20] *Wagoner v. Exxon Mobil Corp.*, 813 F. Supp. 2d 771, 798 (E.D. La. 2011); s*ee also Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) ("A district court should refuse to allow an expert to testify if it finds that the witness is not qualified to testify in a particular field or a given subject.").
[21] *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).
[22] 509 U.S. 579 (1993).
[23] *See Pipitone*, 288 F.3d at 243-44 (quoting *Daubert*, 509 U.S. at 592-93).
[24] *Valencia*, 600 F.3d at 423-24; *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007); *see also Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004); *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584–85 (5th Cir. 2003).
[25] *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002).
[26] *Denley v. Hartford Ins. Co. of Midwest*, No. 07-4015, 2008 WL 2951926, at *3 (E.D. La. July 29, 2008) (citing *Daubert*, 509 U.S. at 591).
[27] *Cunningham v. Bienfang*, 2002 WL 31553976 (N.D. Tex. Nov. 15, 2002).

4

that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."[28] Nevertheless, "[i]f the expert's testimony brings no more to the finder of fact than the lawyers can offer in argument, the expert's opinions should be excluded."[29]

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact.[30] Thus, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[31] The Court is not concerned with whether the opinion is correct, but whether the preponderance of the evidence establishes that the opinion is reliable.[32] "It is the role of the adversarial system, not the court, to highlight weak evidence."[33]

Rule 702 requires an expert to base his or her testimony on "sufficient facts or data." This requires exclusion of opinions based on "insufficient, erroneous information."[34] But experts may rely on one version of a disputed fact, and "reliable expert testimony often involves estimation and reasonable inferences from a sometimes incomplete record."[35] Thus, the presence of unknown variables in an expert's opinion do not necessarily render that opinion unreliable or unhelpful to the jury.[36]

---

[28] FED. R. EVID. 704.
[29] *Sudo Properties, Inc. v. Terrebone Parish Consol. Gov't*, No. 04-2559, 2008 WL 2623000, at *8 (E.D. La. July 2, 2008).
[30] *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).
[31] *Pipitone*, 288 F.3d at 250 (quoting *Daubert*, 509 U.S. at 596).
[32] *See Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012).
[33] *Primrose*, 382 F.3d at 562.
[34] *See Moore v. Int'l Paint, L.L.C.*, 547 Fed. App'x 513, 515 (5th Cir. 2013) (quoting *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009)).
[35] *See id.* at 515-16.
[36] *See Bocanegra*, 320 F.3d at 589-90.

**LAW AND ANALYSIS**

Defendants argue the Court should exclude Dr. McCann's testimony because he admitted he did not adhere to applicable professional standards in forming his expert opinions.[37] In support of this argument, Defendants point to Dr. McCann's deposition testimony.[38] Defendants characterize his testimony as an admission that he did not adhere to the Uniform Standards of Professional Appraisers, the International Valuation Standards, the American Society of Appraisers' standards, the National Association of Certified Valuators and Analysts' standards, or the Association of International Certified Professional Accountants' ("AICPA") standards in forming his opinions.[39] Defendants further argue Dr. McCann violated industry standard by not using multiple methods to calculate the value of Plaintiffs' stock options.[40]

In opposition, Plaintiffs argue "Dr. McCann did not testify that he failed to follow [the standards Defendants identify], but rather that as a PhD economist and CFA who is not a member of those other organizations, *he is not bound by pronouncements about how their members [of those organizations] must perform services*."[41] Plaintiffs argue Dr. McCann's report and analysis comply with Federal Rule of Evidence 702 because "the Backsolve OPM that Dr. McCann applied is approved by the AICPA as the preferred method for valuing private company securities when available, has been accepted by courts, and Dr. McCann explained why he did not apply other valuation methods."[42]

Next, Defendants argue for exclusion of Dr. McCann's testimony based on the

---

[37] R. Doc. 114-4 at pp. 11-16.
[38] *Id.*
[39] R. Doc. 114-6 at pp. 21-23.
[40] R. Doc. 114-4 at pp. 12, 14-16.
[41] R. Doc. 140-4 at p. 14 (emphasis in original).
[42] *Id.*

6

dates he valued the Plaintiffs' stock options.[43] Defendants argue Dr. McCann's stock valuation opinions are irrelevant because Dr. McCann assessed the value of Plaintiffs' stock options on August 26, 2024 and June 6, 2025.[44] According to Defendants, the relevant date for the valuation of Plaintiffs' stock options is the date the alleged breach of contract occurred.[45] In response to Defendants' interrogatories, Plaintiffs stated "their SK-USA Options were cancelled and converted, without Plaintiffs' knowledge and to Defendants' unjust enrichment, on or about December 15, 2020."[46] Defendants argue this is the relevant date to value Plaintiffs' stock options.[47]

Finally, Defendants argue for the exclusion of Dr. McCann's testimony because there is too great an analytical gap between the facts Dr. McCann considered and his opinions.[48] In support of their "analytical gap" argument, Defendants make five underlying arguments: (1) Dr. McCann did not account for the non-marketability of Plaintiffs' options; (2) Dr. McCann makes several "unsubstantiated assumptions"; (3) Dr. McCann's valuation opinions rely on a preferred stock transaction rather than a common stock transaction; (4) Dr. McCann's valuation opinions assume "that Plaintiffs' stock options entitle them to money"; and (5) Dr. McCann did not evaluate a third-party valuation of Smoothie King from 2024.[49]

---

[43] R. Doc. 114-4 at pp. 16-18.
[44] *Id.*
[45] *Id.* at pp. 17-18 (first citing *Womack v. Sternberg*, 172 So. 2d 683, 687 (La. 1965); then *Int'l Rail Partners, LLC v. Am. Rail Partners, LLC*, No. 21-1029, 2025 WL 972576, at *26 (Del. Ch. Mar. 31, 2025)).
[46] R. Doc. 114-12 at p. 8.
[47] R. Doc. 114-4 at pp. 16-18
[48] R. Doc. 114-4 at pp. 18-23.
[49] *Id.*

The criticisms raised by the Defendants all are related to the bases and sources for Dr. McCann's opinions. "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system."[50] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[51] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [factfinder's] consideration."[52] "Furthermore, experts may rely on one version of disputed facts in forming their opinions."[53] "Any weaknesses in his testimony based on questionable assumptions may be dealt with on cross-examination."[54] Even "arguments [that] attack the weight of [an expert's] methodology . . . may be explored on cross-examination."[55] It is "the role of the adversarial system, not the court, to highlight weak evidence."[56]

Dr. McCann clearly is qualified to express the opinions he has provided in this case. In fact, the Defendants do not question his qualifications. The Court finds Dr. McCann's opinions to be relevant and reliable and finds that his testimony will aid the jury in resolving the factual dispute as to the value of the Plaintiffs' stock options. The Court is convinced that Dr. McCann's reasoning is scientifically valid. The objections to Dr.

---

[50] *14.38 Acres of Land*, 80 F.3d at 1078.
[51] *Daubert*, 509 U.S. at 596; *see also 14.38 Acres of Land*, 80 F.3d at 1078 (quoting *Daubert*, 509 U.S. at 596).
[52] *14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996).
[53] *McCrary v. John W. Stone Oil Distrib., L.L.C.*, No. 14-880, 2016 WL 760744, at *3 (E.D. La. Feb. 26, 2016) (first citing *Moore*, 547 Fed. App'x at 515; then citing *Paz*, 482 F.3d at 389).
[54] *Joseph v. Doe*, 542 F. Supp. 3d 433, 438 (E.D. La. 2021).
[55] *See Henson v. Deepwell Energy Sers., LLC*, No. 20-141, 2021 WL 3388036, at *10 (E.D. La. June 14, 2021); *see also Dutch Bro LLC v. DutchPro B.V.*, No. 16-509, 2017 WL 7052291, at *5 (W.D. Tex. Oct. 31, 2017) (quoting *Daubert*, 509 U.S. at 596) ("Given Plaintiff's explanation for the expert's methodology and the fact that this case will be tried to a bench experienced in evaluating expert testimony, Defendant's concerns about the expert's methodology will be best addressed through 'vigorous cross-examination [and] presentation of contrary evidence.'").
[56] *Primrose*, 382 F.3d at 563.

McCann's testimony relate to the bases and sources of his opinion and, as a result, affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact.[57] The Court is convinced the Defendants' will effectively cross-examine Dr. McCann as to the bases and sources of his valuation opinions and will highlight any weaknesses in his testimony for the benefit of the jury.

## CONCLUSION

**IT IS ORDERED** that Defendants' Motion to Exclude the Testimony of Craig McCann[58] is **DENIED**.

New Orleans, Louisiana, this 9th day of September, 2025.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[57] *See Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004).
[58] R. Doc. 113.